UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 25-cr-306 (TNM) |
| : | |
| Darae Vaughn, : | |
| Charles Dixon, : | |
| : | |
| Defendants. : | |
| : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Defendants Darae Vaughn and Charles Dixon be detained pending trial.

The Defendants were indicted on September 30, 2025, with one count of conspiracy to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. §846. Defendant Vaughn was also indicted with two additional counts: distribution of 28 grams or more of cocaine base and 10 grams or more of a fentanyl analogue, both in violation of 21 U.S.C. §841.

The Government now moves for the Defendants' detention pursuant to 18 U.S.C. § 3142(f)(1)(C) (an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 *et seq.*)). By virtue of the offenses alleged against the Defendants, there is a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the Defendants' appearance in this case and otherwise protect the community, pursuant to 18 U.S.C. §§ 3142(e)(3)(A).

Pursuant to the facts, circumstances, and authorities presented herein (and at the detention hearing to be held in this case), the Government respectfully submits that the Defendants should be detained pending trial.

**FACTUAL BACKGROUND**

A.  **Investigative Background/Overview**

The Government's investigation into the Defendants began around March 2025, when the FBI Safe Streets Task Force began investigating 2020 19th Place SE, Washington, D.C. based on reporting that 2020 19th Place SE was an area involved in the sale of cocaine base ("crack cocaine"), PCP, and counterfeit Oxycodone fentanyl M30 Pills.

Between March 4, 2025, and April 2, 2025, the FBI conducted six controlled purchases utilizing a paid confidential source in the vicinity of 2020 19th Place SE from Defendant Vaughn. These resulted in the seizure of crack cocaine, which field tested positive by the FBI to be cocaine, and counterfeit Oxycodone M30 Pills, stamped "M30", which field tested positive by the FBI to contain fentanyl.  The investigation also revealed that Defendant Tevon Greene was a supplier of fentanyl pills to Defendant Vaughn and trafficked 500-1000 fentanyl pills every other week for at least 6 months to Defendant Kelly Watson.

B.  **The Charged Conduct**

Between April 8, 2025, and August 27, 2025, undercovers officers working with the FBI conducted nine controlled purchases directly from Defendant Vaughn.  Each of the buys were video and audio recorded.  The table below includes the confirmed controlled substance as analyzed by the DEA Mid-Atlantic Laboratory and the weight of the drugs tested without packaging.  In each of the buys, the undercover requested blue M30 pills, which are known to contain fentanyl.

| DATE | NARCOTIC | WEIGHT | FORMAT |
|---|---|---|---|
| April 8, 2025 | Fentanyl | 10.16g | 96 counterfeit Oxycodone pills |

| May 27, 2025 | Fentanyl | 7.44g | 70 counterfeit Oxycodone pills |
|---|---|---|---|
| June 5, 2025 | Sebacate<br><br>Fentanyl | 9.59g<br><br>.10 g | 88 counterfeit Oxycodone pills;<br>2 counterfeit Oxycodone pills |
| June 13, 2025 | Methamphetamine | 20.77g | 171 counterfeit Oxycodone pills |
| June 26, 2025 | Acetaminophen/Lidocaine<br><br>Cocaine Base | 20.01g<br><br>3.28g | 153 counterfeit Oxycodone pills;<br>White rock substance |
| July 3, 2025 | Fentanyl<br><br>Cocaine Base | 17.56g<br><br>35.10g | 163 counterfeit Oxycodone pills;<br>White rock substance |
| July 17, 2025 | Acetaminophen/Lidocaine<br><br>Cocaine Base<br><br>Cocaine | 14.28g<br><br>27.45g<br><br>25.39g | 132 counterfeit Oxycodone pills;<br>White rock substance;<br>White rock substance |
| August 1, 2025 | Fentanyl<br><br>Acetaminophen/Sebacate<br><br>Carfentanil<br><br>Cocaine | 9.46g<br><br>15.4g<br><br>17.92g<br><br>27.72g | 86 counterfeit Oxycodone pills;<br>140 counterfeit Oxycodone pills; 161 counterfeit Oxycodone pills;<br>White rock substance |
| August 27, 2025 | Fentanyl<br><br>Cocaine Base | 18.77g<br><br>27.19g | 152 counterfeit Oxycodone pills;<br>White rock substance |

3

The controlled buy on April 8, 2025, from Defendant Vaughn, also directly involved Defendant Dixon. Prior to the buy on that day, the undercover called Defendant Vaughn and confirmed that he had $500 to spend on pills. Shortly after that phone call, Defendant Vaughn called Defendant Dixon. After Defendant Vaughn came out of 2020 19th Place SE, Vaughn told the undercover that they had to go somewhere else to pick up the pills and that it was short five-minute drive. The undercover then drove Defendant Vaughn to 800 Southern Ave SE, Washington, D.C. (Defendant Dixon's address). During the drive, Defendant Vaughn called Defendant Dixon on the phone. Once they arrived at Dixon's location, Dixon came out of the building and both Vaughn and Dixon went inside Dixon's black Mercedes Benz. Shortly after, Vaughn exited Dixon's car and returned back to the undercover and provided about 100 blue pills in exchange for $500.



Each of the eight controlled buys of fentanyl pills following the buy on April 8, 2025, were also video and audio recorded. Each of the buys clearly establish Defendant Vaughn as the

individual selling the pills and cocaine base, such as the one pictured below from August 1, 2025. In total, Vaughn sold over 1400 blue pills, the majority of which tested positive for fentanyl. One August 1, 2025, 161 of the nearly 400 pills he sold that day contained carfetanil, which is a deadly fentanyl analogue.



In addition to fentanyl pills, Defendant Vaughn also sold cocaine and cocaine base. Vaughn told the undercover that he cooks his crack in the microwave and even provided a recipe for turning powder cocaine into crack cocaine.

5



Messages recovered between Defendants Dixon and Vaughn confirm that they supply each other with pills. In January 2025, they argue over how many pills Vaughn owed Dixon. Dixon at one point responded that he wasn't "playing games" and to call his phone and stop texting.

+12023045659 ↘ Received

---

I owe you 50 💊 s right  1/12/2025 9:50:00.000 PM

70 it was 230  ↔ Unknown direction  1/12/2025 9:52:46.000 PM

+12023045659  ↘ Received  1/12/2025 10:11:26.000 PM
Oh Ardd I get you right in the AM Ward .

+12023045659  ↘ Received  1/12/2025 10:11:46.000 PM
Nah It was 300 my man said he sold me . And I took 48 so That's like 248 Ward

+12023045659  ↘ Received  1/12/2025 10:11:55.000 PM
Only took 50

Call my phone stop texting  ↔ Unknown direction  1/12/2025 10:12:01.000 PM

↔ Unknown direction
1/12/2025 10:12:01.000 PM

Call my phone stop texting

↔ Unknown direction
1/12/2025 10:14:23.000 PM

Fool what I gotta lie you owe 70 I'm spending my money ion play games

↔ Unknown direction
1/12/2025 10:16:36.000 PM

Wya Ian got time to go back and forth on the phone you owe me 70 ion know no nothing you telling me that ain't my business I'm talking about what you gave me

**+12023045659**

↘ Received
1/26/2025 1:54:37.000 AM

What I owe you 50 joints right now?

↔ Unknown direction
1/26/2025 1:54:52.000 AM

70

**+12023045659**

↘ Received
1/26/2025 1:56:58.000 AM

I swear it was 50 bro I had 300 in there and gave you 250 🙇 But Ardd

**+12023045659**

↘ Received
1/26/2025 8:05:01.000 PM

I got like 140-150 right here

**+12023045659**

↘ Received
1/26/2025 10:19:39.000 PM

I'm here

**+12023045659**

↘ Received
1/27/2025 5:12:14.000 PM

See when I'm ready and got da 💊s for you you never come grab em . Only way you do when I bring em too you

9



## **PROCEDURAL HISTORY**

On September 30, 2025, the Defendants were indicted by a federal Grand Jury for one count of conspiracy to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. § 846. Defendant Vaughn was also indicted for one count of distribution of 28 grams or more of cocaine base, in violation of 21 U.S.C. § 846(a)(1) and (b)(1)(B)(iii), and one count of distribution of 10 grams or more of fentanyl analogue, in violation of 21 U.S.C. § 846(a)(1) and (b)(1)(B)(vi). On October 2, 2025, both Defendants were arrested by law enforcement officers at their residence.

The Defendants made their initial appearances before the Honorable Zia Faruqui, who set a detention hearing for October 7, 2025, pursuant to the Government's request for detention under 18 U.S.C. § 3142(f)(1)(C).

## **LEGAL STANDARDS**

Pursuant to 18 U.S.C. § 3142(e)(3)(A), there is a rebuttable presumption that no conditions nor combinations of conditions can effectively ensure the Defendant's appearance in this case and otherwise protect the community. Accordingly, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed" the predicate offense. 18 U.S.C. § 3142(e)(3). The indictment, standing alone, constitutes probable cause that the person charged committed the offenses charged and is "enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community." *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996); *accord United States v. Williams*, 903 F.2d 844, 844 (D.C. Cir. 1990).

As the D.C. Circuit has explained, "the presumption operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). But even if the burden of production is met, the presumption "does not disappear entirely," but rather "remains a factor to be considered among those weighed by the district court." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). The Government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight – even where it is presumed that those standards are satisfied.

The Court also may detain a defendant upon motion of the government or the Court's own motion in a case that involves a "serious risk" that the defendant "will flee." 18 U.S.C. § 3142(f)(2)(A). Where "risk of flight" is the basis for detention, the presumption of detention does not apply, but the Government must only prove that no conditions will reasonably assure the defendant's appearance or community safety by a preponderance of the evidence standard – not clear and convincing evidence. *See United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). The Government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). Furthermore, under the Bail Reform Act, the Government may proceed by way of proffer. *See, e.g., United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 42 (D.D.C. 2013).

In considering whether there are conditions of release which will reasonably assure the safety of any other person and the community, and the appearance of the Defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

## ARGUMENT

In consideration of these factors, the Government respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community and the Defendants' appearance at future proceedings.

I.      **Nature and Circumstances of the Offenses Charged**

The nature and circumstances of the offenses charged weigh in favor of detention. There is substantial evidence that the Defendants were engaged in the selling of narcotics, particularly fentanyl—a dangerous and deadly narcotic that is the leading cause of overdose deaths in the country.[1] Counterfeit oxycodone pills, as the ones the Defendants sold in this case, are particularly dangerous because they often appear identical to legitimate prescription pills. The pills Defendants Vaughn and Dixon sold were even blue in color with the stamp "M30" to mimic legitimate prescription oxycodone pills. As the DEA warns, "[t]wo milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage."[2] Further, the use of fentanyl—and the maleffects from that usage—are markedly on the rise. Overdose deaths due to fentanyl and fentanyl analogs in the District of Columbia in 2023 were 98% of all overdose deaths.[3] The graph below provided by the D.C. Office of the Chief Medical Examiner shows that fentanyl deaths continue to be on the rise:[4]

---

[1] The Centers for Disease Control report that: "Synthetic opioids like fentanyl contribute to nearly 70% of overdose deaths.3 Even in small doses, it can be deadly." *See* Fentanyl Facts, https://www.cdc.gov/stop-overdose/caring/fentanyl-facts.html?CDC_AAref_Val=https://www.cdc.gov/stopoverdose/fentanyl/index.html (April 2, 2024).

[2] https://www.dea.gov/resources/facts-about-fentanyl

[3] https://ocme.dc.gov/sites/default/files/dc/sites/ocme/agency_content/Opioid%20related%20Overdoses%20Deaths_Jan%202024.pdf

[4] https://ocme.dc.gov/sites/default/files/dc/sites/ocme/agency_content/Opioid%20related%20Overdoses%20Deaths_Jan%202024.pdf



Next, carfentanil—a fentanyl analogue—is even more dangerous than fentanyl itself. "Fentanyl is approximately 30 times more potent than heroin and approximately 60 times more potent than morphine. The fentanyl analogues alfentanil and carfentanil are 600 and 10,000 times more potent than morphine, respectively. Due to the potency of fentanyl and its analogues, there is a greater potential for fatalities among both experienced and inexperienced drug users. This potential for fatality is often increased where users are unaware they are using fentanyl."[5] Thus, conservatively, the 10 grams of carfentanil that Defendant Vaughn sold was as potent as 100 grams of fentanyl.

Further, a search of both Defendants' residences yielded additional blue pills (lab test pending), and a gun in each residence. In Defendant Dixon's resident at 800 Southern Ave SE, officers recovered one handgun in his bedroom and a bottle of blue pills in the kitchen. While lab tests are still pending for the pills, Defendant Dixon did test positive for fentanyl at lockup. In

---

[5]https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210125_Fentanyl-Report.pdf

Defendant Vaughn's residence at 115 Franklin Street NE, officers recovered one handgun and hundreds of blue pills. Another controlled buy was set up for the morning of Vaughn's arrest, and Vaughn had also agreed to sell the undercover a handgun—the same model of handgun he had previously told the undercover that he generally carries. Accordingly, the evidence shows that the Defendants worked together to have ready access to large quantities of this highly dangerous drug, while each possessing a firearm, and that they were willing to sell it to unwitting participants. *See United States v. Brown*, 538 F.Supp.3d 154, 167 (D.D.C. 2021) (participation in fentanyl conspiracy "strongly suggest that, if released, he would have the means to purchase and distribute narcotics and thereby endanger the D.C. community").

## II.   Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, is incredibly strong—and also favors detention. Each of the nine controlled buys from Defendant Vaughn were audio and video recorded and clearly show an exchange of cash for narcotics. The controlled purchase on April 8, 2025 also clearly implicates Defendant Dixon as he was observed on video meeting with Defendant Vaughn. And right after Vaughn left Dixon's vehicle (a vehicle registered to Dixon in his true name at his known address), Vaughn handed the undercover the approximate 100 fentanyl pills. Additionally, their relationship is further corroborated by their text message exchanges, albeit they were limited because Defendant Dixon (smartly) warned Vaughn to call, and not to discuss pills over text.

## III.   Defendant's History and Characteristics

The third factor, the history and characteristics of the defendant, similarly weighs in favor of detention. Defendant Vaughn is 30 years old. He has three non-traffic, adult convictions, including a prior gun conviction and prior narcotics distribution conviction. Both prior convictions

are particularly troubling when they demonstrate a pattern of narcotics trafficking and gun possession. "And prior trafficking, in turn, is probative of future trafficking." *Brown*, 538 F.Supp.3d 154, 170. *See also United States v. Richards*, 783 F. Supp. 2d 99, 103 (D.D.C. 2011) (holding that a defendant's "history of drug-related conduct and apparent escalation with drugs provides [a] reason to believe that [the defendant] may continue to be involved with drugs if he is released before trial")." The third and final conviction demonstrate Defendant Vaughn's contempt for court orders. His conviction for prisoner breach stems from his escape from Hope Village Halfway House in 2016.

Defendant Dixon is 46 years old with 10 prior convictions and 27 prior arrests. Dixon has at least one prior felony, from a gun offense in 2001. Like Vaughn, Defendant Dixon also has a conviction for distribution of marijuana, but more remote and going back to 2004. Given that his more recent convictions are not drugs or gun related, this factor does not weigh heavily in favor of detention for Defendant Dixon.

## IV. Danger to the Community

Finally, the nature and seriousness of the danger to any person or the community posed by the Defendants' release are grave. The Defendants sold dangerous fentanyl in the form of pills that were masked to look like legitimate prescription medication, and in the case of Defendant Vaughn, he also sold cocaine and cocaine base. Both Defendants possessed a firearm—Dixon as a felon and Vaughn in connection with drug trafficking. Based on the evidence in this case and their prior history, there is a real danger that both defendants will return to drug dealing if released.

Given the above assessment of all four relevant factors, no condition, or combination of conditions, can ensure the safety of the community or ensure that the defendants will comply with court orders and abide by appropriate release conditions.

## **CONCLUSION**

The Government respectfully requests that the Court grant the Government's motion to detain Defendants Darae Vaughn and Charles Dixon pending trial in this case.

                                        Respectfully submitted,

                                        JEANINE FERRIS PIRRO
                                        United States Attorney

                                        */s/ Iris McCranie*
                                        Iris McCranie
                                        N.Y. Bar 5011234
                                        Assistant United States Attorney
                                        601 D Street, NW
                                        Washington, D.C. 20530
                                        202-252-7828
                                        Iris.mccranie@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2025, a copy of the foregoing was submitted via CM/ECF, which will transmit to counsel of record to Defendants' counsels.

                                                */s/ Iris McCranie*
                                                Iris McCranie
                                                N.Y. Bar 5011234
                                                Assistant United States Attorney
                                                601 D Street, NW
                                                Washington, D.C. 20530
                                                202-252-7828
                                                Iris.mccranie@usdoj.gov